1531, Cigar King, LLC v. Corporacion Habanos. Mr. Herrera, we're over here already. Good morning, Your Honors. My name is Frank Herrera on behalf of Appellant Cigar King. We have an issue that is somewhat low-tech compared to the prior two cases heard before this Court. I know, isn't it great? I'm almost embarrassed to waste your time on the type of issues that we're talking about here. But I appreciate the opportunity to be here. The issue that we're appealing, and not necessarily brought up by subsequent to our briefing by Corporation Habanos, is whether Corporation Habanos actually had standing to bring a cancellation proceeding against two of my clients' trademark registrations. Why is this appeal moot? Well, thank you. We don't believe it's moot because we believe we had an opportunity to argue standing that we wouldn't have gotten to the situation we're in. Additionally, we don't believe it's moot in so much that when the June 12th order came down from the trademark office issuing the cancellations, we immediately appealed this matter to this Court. If the Court finds that it's moot, we would probably be okay with that as long as the trademark office's order is vacated. That would open the opportunity for my client to file its trademark applications anew, just like any other. If it's moot based on your conduct, what is the legal basis upon which you would argue that we should therefore also vacate the decision below? Well, the issue in that situation would be that the Board's June 12th order didn't necessarily cancel, as Habanos actually argued, the registrations at that moment. Rather, the registrations were canceled a month or so later because of the failure to file the Section 8 affidavits. Well, that's what makes your case moot. You didn't follow through and file the affidavits, and they canceled it independently of this action to challenge your trademark. Well, we believe that, again, if the case is moot, that shouldn't foreclose us from filing our applications anew because essentially it would be mooted. The big picture is we don't vacate it if it's your fault that it becomes moot. Well, we don't believe that it was our fault because... You didn't file the affidavits. We didn't, Your Honor, but we also don't see any case law that directs that an affidavit not filed after the cancellation order has issued necessarily makes an issue moot and not appealable. We don't see that in any case law, any directive. Well, it's not filing the affidavit. It's not filing the affidavit causing the PTO to cancel your mark that makes it moot. Yes, Your Honor, but this issue, be that as it may, this issue and these cases before Corporation Habanos, and this is just one case that we've had personally, our firm, and many other firms over the course of 13 years, is that Corporation Habanos should not even bring these cases to begin with. There are actually, before this court, on a separate case, the Cohiba case, which I think another panel heard a couple in the United States, what is their real interest? And that's what we'd like to address. We were actually foreclosed from making those arguments at the trademark office before the board because of the order that... Well, you were foreclosed because you didn't comply with your discovery obligation. That's correct, Your Honor, and I won't go into that. But dismissal based or canceling a trademark is really an exceptional thing. We actually asked and agreed to some of the sanctions, and all we said, that's fine. Just let us defend against what is their burden to prove their standing. That's all we asked for. We conceded all kinds of things. We said we just want to dispute the standing issue, and we were foreclosed from doing that on a trial of merits. Another issue – actually, I'm going to go ahead and concede my time now and let – go to the counsel. Mr. Goldstein? Good morning, Your Honors. May it please the Court, David Goldstein on behalf of the Petitioner's Appellees, Corporacion Habano S.A. and Cuba Tobacco. If I heard Mr. Herrera correctly, he seems to be conceding that the appeal is moot because he failed to file the timely Section 8s. And I don't see any way around that first problem that the appeal is moot because the Section 8a is crystal clear. Each registrant must file a Section 8 application within six and a half years, and if not, it shall be canceled. There's nothing that the Board, the Director, or this Court can do to correct the failure to file before the mark – the registrations are actually canceled. And in this case, the Board said they will be canceled in due course. Pursuant to its rules, they weren't canceled until after this appeal would become final. Is it your view that we're compelled – this Court is compelled to not vacate the decision below, or that it's a discretionary matter, or that we're compelled not to vacate? Well, I think in this case you're compelled because the standard is, was it caused by happenstance or circumstances beyond the party, the losing party, who caused the mootness is controlled, or was it through a voluntary action or inaction? In other words, they simply forgot to do something. It's not the Board's fault. It's not the PTO's fault. It's not the petitioner's fault. So in that case, yes, there's no basis to vacate absent exceptional circumstances, some kind of compelling equity or some kind of factual dispute. But Mr. Herrera has not put in any compelling circumstance or any extraordinary circumstance or any facts. So there's nothing for this Court or the Board to weigh or evaluate against each other as to whether or not it should vacate. Under a U.S. Bancorp, it has to, and this Court's aquamarine decision, it has to leave the judgment in place unless there's some exceptional circumstance, and there's no such circumstance here. There's nothing for this Court to do that would be different than the Board. So yes, I would say this Court would be in a position of finding the case moot and leaving the judgment in place. And in this case in particular, the registrant has no equity. It chose not to comply with the Board's discovery orders, and then when the sanctions motion came in, it still chose not to comply. And in fact, it proposed minor sanctions that would allow it to continue to disobey the order. So it has no equities in its favor before the Board, and it has no equity here because it just simply failed to file the Section 8s. So yes, I would say, one, it's moot, and two, the judgment should remain in place. And this is that kind of case that U.S. Bancorp was talking about. The Board devoted substantial resources. It actually issued four substantive decisions in the case. It had to address a default question, a motion to dismiss by me on a counterclaim that was granted, a motion to compel which it granted, and then a motion for sanctions. And that judgment telling the world before the Board that if you don't comply with your discovery requests, you may very well find yourself sanctioned, including judgment, is a valuable public resource, exactly as U.S. Bancorp said. So on the question of mootness, there's no way around this problem for the registrant because there's just no exception there. The world needs to rely on the U.S. Registry. It needs to be able to look and say, has a Section 8 been filed? If not, this registration is dead. If the Board has issued a decision that says the registration will be canceled in due course, it knows it hasn't been canceled yet, and it can see from the registry that an appeal is pending. So until a Section 8 deadline comes along, it's alive. And if you fail to file, it's dead. And the world needs to be able to look at the PTO online registry and know what the situation is and not guess, well, are they going to continue the appeal or do they have equities in their favor? So on both the question of mootness, I think that's straightforward. We spent a lot of time on taxis because the Court had mentioned that. And I think if we look at the 110 registration, the one that's in Taxis 1, you'll see it's on all fours with this case. That's the one that they didn't challenge, even though the Board and the PTO had made all kinds of mistakes. They didn't seek to restore that one because they had failed to file the Section 8 before it was canceled. And so I think if we look at Taxis 1 and compare that to the craziness kind of that happened in the second registration, we can see that there's really no way around the mootness problem. I don't know if the Court wants me to address standing or whether standing was waived. I'm perfectly happy to address those points. Just one quick question. Your friend mentioned another case that you had had here that involved you before another panel. Judge Hughes, I believe, was on that panel. I mean, there's no relevance that you see. I don't see any relevance to that case. That was a case that was litigated up and down in the Second Circuit and the question was, what was the impact of that decision on the Board? And we made our arguments and they made their arguments. That's pending. But in terms of the standing problem, that's just so different that I don't see any relevance to that here. I'll give up my time in case you have questions. Thank you. I just want to address one issue. You asked whether there was any relevance on the Cohiba case. The only relevance I would see is that Corporation Obanos lost at the Second Circuit, continued to lose, went back down to the Trademark Office to try to litigate the issue again. The Trademark Office actually, for the first time, told Corporation Obanos that it did not have standing, and the basis for that is complicated and it's in that briefing. But the essential issue there was the Trademark Office said you don't have standing because the Second Circuit says you don't have any rights to this mark in the United States, and that is our central issue for standing. Corporation Obanos... So if you had followed through with your discovery obligations, you may have been able to raise this argument, but you didn't and you got a sanction that doesn't appear to be an abuse of discretion. Well, if I can address the issue on the Obanos marks, they disclaimed the use of Obanos on the marks. Every mark that they have before the Patent and Trademark Office, they've disclaimed it. They do not claim exclusive use to the word Obanos. The registrations that they submitted, in fact, they allege that they have a certification mark, but they have a pending application before the Trademark Trial and Appeal Board, which has been systematically denied because... Are we litigating the other case? Are you still talking about the other case? It just goes to standing that we just wanted to address whether that case had any relevance. It did have relevance because it was found that Cohiba, they had no legal rights to that mark. Our issue on standing is that they have no legal right to Obanos. They have no real interest. They have no real objectionably rational basis to support that real interest in the United States because of their foreclosed ability to sell cigars in the United States. But the issue before us was whether or not you could use the board abuse of discretion by not allowing you to present that issue, right? Well, and you asked, my friend, whether you are compelled to vacate this matter, and I don't believe you are compelled. I didn't find a case that said you are compelled. You can take into consideration some equity arguments, and certainly we would like to bring those arguments based on equity, that the issue of standing is so important to this case and to many of the cases that they have brought against similarly situated small cigar manufacturers that equity would really be in our best interest, our best argument here. Thank you very much. Thank you. The case is submitted. That concludes the hearing for this morning. Thank you, Your Honor. All rise.